UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CAPE HATTERAS ACCESS PRESERVATION ALLIANCE, et al., <br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, et al., <br> Defendants <br><br> v. <br><br> DEFENDERS OF WILDLIFE and THE NATIONAL AUDOBON SOCIETY, <br> Defendant-Intervenors. | Civil Action No. 09-236-RCL |

## MEMORANDUM AND ORDER

A court that orders an administrative agency to supplement the record of its decision is a rare bird. Pending before the Court is the plaintiffs' motion [16], which asks the Court to do just that, and/or admit extra record evidence. Upon consideration of the motion, the opposition, and the reply thereto, and the entire record herein, the plaintiffs' motion will be denied for the reasons set forth below.

## I. Introduction

The piping plover is a small, sand colored shorebird that nests at beaches in eastern North America, including the Outer Banks of North Carolina and portions of the Cape Hatteras National Seashore. Since 1986, the species has been classified as threatened in the eastern United States. *CHAPA v. Dep't of the*

*Interior*, 344 F. Supp. 2d 108, 115 (D.D.C. 2004) (Lamberth, J.). As a result of the piping plover's threatened status, in 2001 the Fish and Wildlife Service ("FWS" or "Service") designated some 137 coastal areas as critical habitat for the piping plover. *Id.* Eighteen of these critical habitats were in North Carolina. *Id.* This Court vacated FWS's designation of five critical habitats in North Carolina and remanded to the Service for further action consistent with its opinion. *Id.* at 137. FWS subsequently redesignated those same five areas as critical habitats, and plaintiffs once again decided to challenge the agency action.

At issue is whether this Court should consider a report that relates to the conservation of piping plovers, the *Biological Opinion for Cape Hatteras National Seashore's Interim Protected Species Management Strategy* and various supplements to it (collectively "the BiOp"), either because it was actually a part of the administrative record before the Service, though FWS did not designate it as such, or as extra-record evidence in the event the Court finds it was not a part of the administrative record. Neither party contests that the BiOp was a document that was substantially relied on by the National Park Service in development the *Cape Hatteras National Seashore's Interim Protected Species Management Strategy* ("*Interim Strategy*"), or that the *Interim Strategy* was before FWS when it designated the critical habitats. The Service, however, contends that it did not have the BiOp before it when making its decision to designate habitats critical to the conservation of the piping plover.

## II.  Standard of Review

As the Endangered Species Act ("ESA") does not specify a standard of review, judicial review of decisions made under the ESA is had under the same standard as the Administrative Procedures Act ("APA").  *Gerber v. Norton*, 294 F.3d 173, 178 & n.4 (citing *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982)).  And in reviewing agency action, a court is generally confined to reviewing the administrative record that was before the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Nonetheless, there are some circumstances where the administrative record needs to be supplemented due to some deficiency, though that is an exceptional occurrence.  *Motor & Equipment Mfrs. Ass'n v. EPA*, 627 F.2d. 1095, 1105 n.18 (D.C. Cir. 1979).  It is likewise the case that consideration of extra-record evidence in reviewing agency action is extraordinary.  Indeed, a court's review should generally be confined to the same information that was before the agency when it made its decision.  *Citizens to Preserve Overton Park*, 401 U.S. at 420; *Walter O. Boswell Mem'l Hosp. v. Heckley*, 749 F.2d 788, 792 (D.C. Cir. 1984).

There is some confusion between the parties as to what standards of review are appropriate in this case.  Indeed, this is not the first time that such confusion has occurred.  *See Pac. Shores Subdivision v. Army Corps of Engineers*, 448 F. Supp. 2d 1, 5–6 (D.D.C. 2006) (discussing different standards for adding to administrative record).  Undoubtedly some of that confusion is caused by the use

3

of the word "supplement" in both types of cases. *Compare Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991) ("Ordinarily, judicial review of informal agency rule-making is confined to the administrative record; neither party is entitled to *supplement* that record with litigation affidavits or other evidentiary material *that was not before the agency*.") (quoting *Edison Elec. Inst. v. OSHA*, 849 F.2d 611, 617–618 (D.C. Cir. 1989)) (emphasis added) *with Sara Lee Corp. v. American Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008). While it is ultimately the province of the Court of Appeals to clarify these issues, the Court thinks that some guidance is nonetheless appropriate here.

The Court will first examine those cases where a party seeks supplementation, which is essentially a claim that some information that should have properly been included in the administrative record was not. Next the Court will examine those cases that ask for consideration of extra-record evidence, because were it not to do so, reviewing agency action would be unnecessarily difficult.

A. *Supplementing the Record*

Judicial review of agency action under the APA is generally confined to the administrative record. *See* 5 U.S.C. § 706. Ordinarily the record is comprised of those documents that were before the administrative decisionmaker. *Citizens to Preserve Overton Park*, 401 U.S. at 420; *see also* FED. R. APP. P. 16(a) ("The record consists of the order involved, any findings or reports on which that order is based, and the pleadings, evidence, and other parts of the proceedings before the

agency.).  A court should generally consider neither more nor less than what was before the agency at the time it made its decision.  *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997).  This means the agency must compile all the information it considered directly or indirectly.  *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Lamberth, J.).  However, it is the responsibility of the deciding agency to compile the administrative record, and the agency is presumed to have properly done so.  *Id.*

In order for a Court to order supplementation, the plaintiff must overcome this strong presumption of regularity by putting forth concrete evidence that the documents it seeks to "add" to the record were actually before the decisionmakers.  *Sara Lee Corp*, 252 F.R.D. at 34.  There should be nothing controversial about this proposition.  If for some reason, materials that were actually a part of the agency's record were not properly included, whether by design or accident, they should be included in the record for the Court's review.  It is only the court's deference to the agency's compilation that counsels pause.  If it can be shown that the materials sought to be included in the record before the court, were indeed before the agency, supplementation is appropriate.  *See, e.g.*, *Natural Resources Defense Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975).   Here, however, that showing has not been made.

Despite that both parties agree that the BiOp was heavily relied upon in preparation of the *Interim Strategy*, that fact alone does not mean it was actually before the agency when it made its current decision.  And despite the references to

5

the BiOp in many documents that were contained in the administrative record, this too does not prove that it was before the agency when it made its decision. It may well have been that the *Interim Strategy* obviated the need to consider the BiOp independently, as much of the relevant information from the BiOp was included in the *Interim Strategy*. Additionally, the BiOp's acknowledgment of the proposed critical habitat designations, and the effect that would have on the Interim Strategy, does not prove that it was considered by the agency when making the critical habitat designation. Finally, the fact that some comments received during the critical habitat designation process mentioned the BiOp, does not mean that the BiOp itself was considered by FWS. Because none of these references alone are enough to overcome the strong presumption that FWS properly designated the administrative record, and the plaintiffs have not introduced any concrete evidence that the BiOp was before the agency, the plaintiffs' motion to supplement the record shall be denied.

*B. Going Beyond the Record*

Going beyond the administrative record presented by the deciding agency when reviewing its action is only done in exceptional cases. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Still, there are certain limited, and highly exceptional, circumstances when a court may review evidence beyond the administrative record. *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)). Again, there is some dispute among the

parties about how many exceptions exist. The plaintiffs argue that if their case falls into any one of the eight exceptions identified by the Court of Appeals in *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), extra-record review is warranted. The defendants, understandably, argue that the *Esch* exceptions are much narrower than the plaintiffs suggest. The Court agrees with the defendants that the *Esch* exceptions are not as broad as the plaintiffs, and even some cases from the district court, suggest.

In *Esch*, a group of family farmers sued the Secretary of Agriculture for an injunction against the "arbitrary and capricious denial of subsidy payments to them." *Id.* at 984. The plaintiffs specifically contended that the Secretary's decision was procedurally defective. *Id.* In finding for the plaintiffs, the district court considered extra-record evidence, something the court of appeals upheld. However, it did so because it was the procedure by which the Secretary reached his decision that was being challenged, rather than its substance. *Id.* at 991. Like in this case, the Secretary there argued that review was committed to the administrative record. *Id.* The *Esch* Court agreed that was the normal rule, and stated that the rule applied with "its maximum force when the substantive soundness of the agency's decision is under scrutiny. . . ." *Id.* The court noted, however, that it was the procedural validity of the Secretary's actions that "remain[ed] in serious question." *Id.* While not completely foreclosing use of extra-record evidence in reviewing substantive decisions, the court said that "[p]articularly in the [procedural] context, it may *sometimes* be appropriate to

7

resort to extra-record information *to enable judicial review to become effective*." *Id.* (emphasis added). Finally the court went on to list the "number of exceptions countenancing use of extra-record evidence *to that end*." *Id.* (emphasis added).

Read in context, this Court thinks that the *Esch* exceptions are generally more appropriately applied in actions contesting the procedural validity of agency decisions, but even if they are not so limited, it is clear that they were to be sparingly applied to only those cases where extra-record evidence was necessary to make judicial review effective. *See Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008); *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6. This is not such a case.

As the Court sees it, the incorporation of the BiOp into the *Interim Strategy*, which has been included in the already the substantial administrative record, makes it unclear how judicial review could be any more effectual were the Court to consider the BiOp. Still, the proper inquiry is whether judicial review can be had without the BiOp, and the plaintiffs have not demonstrated that to be the case by showing the Court how the current record is inadequate to review the Service's designation of the critical habitats.

Additionally, there are many other cases that seem to suggest that the *Esch* exceptions are not as widely accepted as the plaintiffs contend. *See generally Axiom Resource Mgmt. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (discussing viability of *Esch* in light of later D.C. Circuit cases); *see also Amfac Resorts*, 149 F. Supp. 2d at 12 ("In this Circuit, four separate exceptions are well

8

established."). For example, in *IMS, P.C. v. Alvarez*, the Court of Appeals only identified four instances in which accepting the plaintiffs' extra-record evidence would be appropriate. 129 F.3d 618, 624 (D.C. Cir. 1997).  Those were "when the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted in bad faith or engaged in improper behavior in reaching its decision." *Id.*

The plaintiffs do not argue that the agency acted in bad faith, that they engaged in improper behavior in reaching their result, or that they have failed to explain their decision. They do, however, argue that the BiOp report may be useful for the Court to determine whether or not FWS considered all the relevant factors it needed to makes its decision in designating the critical habitats. However, given that the plaintiffs concede the *Interim Strategy* draws much of its information from the BiOP, at this time the Court does not see how reviewing the BiOP in addition to the *Interim Strategy* will further add to its understanding of the case. Nor do the plaintiffs explain in their reply how reviewing the BiOP will assist the Court in determining whether FWS considered all the relevant factors in designating the critical habitats. They have not identified any particular factors FWS failed to consider, or how the BiOp demonstrates what factors FWS needed to consider in designating critical habitats. Accordingly, the Court will not consider the BiOp as extra-record evidence and the plaintiffs' motion will be denied.

## III. CONCLUSION

As the plaintiffs have failed to overcome the strong presumption that FWS properly designated the administrative record by demonstrating that the BiOp was before FWS when it was designating critical habitats, it is hereby ORDERED that their motion to supplement the administrative record is DENIED; and it is further ORDERED

That the plaintiffs' motion to consider the BiOp as extra-record evidence is DENIED as they have failed to demonstrate that any exception allowing the Court to do so applies.

**SO ORDERED** this 4th day of November 2009**.**

/s/
ROYCE C. LAMBERTH
Chief Judge
United States District Court